IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JERRY JOSEPH HIGDON, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:07cv310-MEF |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Jerry Joseph Higdon, Jr. ("Higdon") asks the court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. After due consideration of Higdon's § 2255 motion, the supporting and opposing submissions, and the record in this case, the court concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the motion should be denied.

## I.   PROCEDURAL HISTORY

On May 9, 2003, a jury found Higdon guilty of two counts of distribution of "ice" methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Counts Two and Three); possession with intent to distribute "ice" methamphetamine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1) (Count Four); and a drive-by shooting, in violation of 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2, and 18 U.S.C. § 36(b) (Count Ten).[1]  Sentence was

---

[1]Higdon was found not guilty of conspiring to distribute "ice" methamphetamine, in violation of 21
(continued...)

imposed on August 8, 2003, with Higdon receiving 480 months as to each of the three drug counts and 300 months on the drive-by shooting count, with each term consecutive to each other.  Higdon appealed to the Eleventh Circuit Court of Appeals, and on September 28, 2004, that court affirmed his convictions and sentence.[2]  *See United States v. Higdon*, 122 Fed.Appx. 985 (11th Cir. 2004) (Table).  That court later denied rehearing en banc.  *See United States v. Higdon*, 418 F.3d 1136 (11th Cir. 2005).  The Supreme Court subsequently remanded the case to the court of appeals for further consideration of Higdon's sentence in light of *United States v. Booker*, 543 U.S. 220 (2005).  *See Higdon v. United States*, 546 U.S. 802 (2005).  On December 13, 2005, the Eleventh Circuit reaffirmed Higdon's sentence. *United States v. Higdon*, 159 Fed.Appx. 96 (11th Cir. 2005).

On April 6, 2007, Higdon filed this § 2255 motion, in which he asserts the following claims:

    1.    The district court improperly enhanced his sentence based on

---

(...continued)
U.S.C. § 846(a)(1); on an additional substantive count of distribution of "ice," in violation of 21 U.S.C. § 841(a)(1); on an additional substantive count of possession with the intent to distribute "ice," in violation of 21 U.S.C. § 841(a)(1); and on three counts of using a firearm in relation to the charged drug crimes, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), (iii), and (B)(i), respectively.

    [2]On direct appeal, Higdon argued that (1) the evidence demonstrated he was entrapped as to Counts Two and Three; (2) the district court erred in denying his motion for judgment of acquittal as to his conviction for possession with intent to distribute methamphetamine; (3) the district court was required to conduct an evidentiary hearing to determine whether to grant a motion for new trial based on newly discovered evidence; (4) the government withheld exculpatory statements in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and (5) the district court erred in accepting the offense level calculations in the PSI because the computation was based on a proffer by his codefendant.

"known unreliable statements."[3]

2.    The government withheld exculpatory statements and tape recordings in violation of *Brady v. Maryland*.

3.    The government failed to correct known false testimony from government witnesses.[4]

4.    He received ineffective counsel for the following reasons:[5]

    a.    Counsel failed to raise an *Apprendi* claim when the court increased his offense level on the basis of facts not submitted to the jury and proved beyond a reasonable doubt.

    b.    Counsel failed to investigate and properly prepare for argument on attributable drug amount.

    c.    Counsel failed "to properly investigate the confidential informants and their reliability."

    d.    Counsel failed to investigate the authenticity of, or object to, audiotapes played as evidence at trial.

The government answers that Higdon's claims are either procedurally barred or meritless and that, therefore, they afford Higdon no basis for relief.  (Doc. No. 5.)  Higdon was allowed an opportunity to respond to the government's answer and has done so.  (Doc. No. 7.)

---

[3]This claim is raised as ground four of the motion to vacate at page 9.

[4]This claim and the preceding claim are raised as ground three of the motion to vacate at page 8.

[5]These claims are raised in ground one of the motion to vacate at page 5.

3

## II.  DISCUSSION

### A.  *Substantive Claims Raised and Resolved on Direct Appeal*

"The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *see also United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981).  If a claim has previously been raised on direct appeal and decided adversely to a defendant, it cannot be relitigated in a collateral attack under § 2255.  *See Nyhuis*, 211 F.3d at 1343.  Furthermore, "[a] rejected claim does not merit rehearing on a different, but previously available, legal theory."  *Id*.

### 1.  Enhancement of Sentence Based on "Known Unreliable Statements"

In his § 2255 motion, Higdon claims that the district court improperly enhanced his sentence based on "known unreliable statements."  *See § 2255 Motion* (Doc. No. 1) at p. 9. This same claim was raised by Higdon on direct appeal, where he argued that the district court erred in computing his offense level based on the allegedly unreliable statements made in a proffer by his codefendant, John Gabriel Medley.  *See United States v. Higdon*, 122 Fed.Appx. 985 (11th Cir. 2004).  The Court of Appeals found this claim to be meritless and decided the attendant issues adversely to Higdon.  *Id*.  Because this claim was raised and resolved in Higdon's direct appeal, this court will not reconsider the claim here.  *Nyhuis*, 211 F.3d at 1343.

### 2.  *Brady* Violation

4

Higdon also asserts a claim that the government withheld exculpatory statements and tape recordings in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  *See § 2255 Motion* (Doc. No. 1) at p. 8.  On direct appeal, Higdon presented a claim that the prosecution committed a *Brady* violation by withholding an allegedly exculpatory statement by Daniel Pitts to drug enforcement agents that John Gabriel Medley was the major source of "ice" in the Montgomery area.  *See United States v. Higdon*, 122 Fed.Appx. 985 (11th Cir. 2004).  The Court of Appeals considered this claim and found it to be without merit.  *Id*.  To the extent that Higdon again alleges a *Brady* violation based on the government's withholding of such statements, his claim is barred from reconsideration by this court.  *Nyhuis*, 211 F.3d at 1343.  To the extent that Higdon now alleges a *Brady* violation based on the alleged withholding of tape recordings – a specific allegation not made on direct appeal – his claim will be discussed below.

**B.      *Substantive Claims Not Raised on Direct Appeal***

Higdon asserts two substantive claims not presented on appeal: (1) that the government withheld exculpatory tape recordings in violation of *Brady v. Maryland*, and (2) that he was denied due process because the government failed to correct known false testimony from government witnesses.  *See § 2255 Motion* (Doc. No. 1) at p. 8.

Ordinarily, if an available claim is not advanced on direct appeal, it is deemed procedurally barred in a § 2255 proceeding.  *See Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir. 1994); *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989).  A

petitioner can avoid this procedural bar only by showing both cause for the failure to raise the claim on direct appeal and actual prejudice arising from that failure. *See United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Mills*, 36 F.3d at 1055. Higdon suggests that ineffective assistance of counsel is the cause for his failure to raise these claims on direct appeal. *See § 2255 Motion* (Doc. No. 1) at pp. 10-11.

Ineffective assistance of counsel may satisfy the cause exception to a procedural bar, *see Greene*, 880 F.2d at 1305, but only if the claim of ineffective assistance is meritorious. *Id*. To determine whether it is, this court must decide whether counsel's failure to assert the underlying substantive claim could have affected the outcome of Higdon's appeal. *See Nyhuis*, 211 F.3d at 1344. Appellate counsel is not ineffective for failing to raise meritless claims. *Id*. Because this court concludes, as discussed more fully below, that Higdon's underlying claims in this regard lack merit, he has failed to demonstrate cause for his procedural default.

Higdon also asserts several additional, independent claims of ineffective assistance of counsel. Those claims are also reviewed below in the discussion of Higdon's allegations of ineffective assistance of counsel.

## C.     *Ineffective Assistance of Counsel*

A claim of ineffective assistance of counsel is governed by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). *Grossman v. McDonough*, 466 F.3d 1325, 1344 (11th Cir. 2006). Under *Strickland*'s two-part test, a petitioner must demonstrate (1) that

"counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (internal quotation marks omitted); *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). A "reasonable probability is one "sufficient to undermine confidence in the outcome." *Strickland*., 466 U.S. at 694.

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

7

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

## D.  *The Ineffective Assistance Claims*

### 1.  **Failure to Raise *Apprendi* Claim**

Higdon maintains that his counsel rendered ineffective assistance by failing to raise an *Apprendi* claim at sentencing when the court increased his offense level on the basis of facts not submitted to a jury and found beyond a reasonable doubt.[6]  *See § 2255 Motion* (Doc. No. 1) at pp. 5-6.

### a.  *Merits of Apprendi Claim*

Higdon's suggestion that his sentence runs afoul of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), rests on an untenably broad and erroneous reading of that decision. In *Apprendi*,

---

[6]In determining Higdon's base offense level, the district court attributed quantities of methamphetamine and marijuana to Higdon, then determined the marijuana equivalency of the total drug amount attributable to him. *See* U.S.S.G. § 2D1.1. The court found that a total of 20,069.49 kilograms of marijuana equivalent was attributable to Higdon, meaning that he was assigned a base offense level of 36. *See* U.S.S.G. § 2D1.1(c)(2). The court increased Higdon's offense level (i) by two levels because he possessed a firearm in connection with the offense, *see* U.S.S.G. § 2D1.1(b)(2); (ii) by four levels based on Higdon's role as an organizer/leader of an extensive criminal activity, *see* U.S.S.G. § 3B1.1(a); and (iii) by two levels based on his obstructions of justice, *see* U.S.S.G. § 3C1.1. Thus, Higdon's total offense level was 44.

the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The Supreme Court in *Apprendi* expressly declined to overrule its earlier holdings that sentencing factors may be used to increase the penalty for an offense under a preponderance of the evidence standard. *See Apprendi*, 530 U.S. at 487 n.13. Rather, *Apprendi* only requires those sentencing factors that increase the penalty beyond the statutory maximum to be submitted for proof beyond a reasonable doubt. *Id*. at 490. Thus, *Apprendi* applies only if a fact increases the penalty for a crime beyond the prescribed statutory maximum. *See Harris v. United States*, 536 U.S. 545, 558 (2002); *United States v. Sanchez*, 269 F.3d 1250, 1268 (11th Cir. 2001).

In Higdon's case, the statutory maximum sentence for each of the three drug offenses was forty years (480 months). *See* 21 U.S.C. § 841(b)(1)(B). Drive-by shooting is punishable by imprisonment for up to twenty-five years (300 months). *See* 18 U.S.C. § 36(b)(1). Thus, the sentence imposed against Higdon for each conviction was the statutory maximum, but did not exceed the statutory maximum. And so long as each sentence was within the applicable statutory maximum, there was no *Apprendi* error in the court's imposing consecutive sentences on the multiple counts of conviction.[7] *See United States v.*

---

[7]Higdon's total offense level of 44, when combined with his Criminal History Category of I, called for concurrent sentences of life in prison under the Sentencing Guidelines. Because none of the offenses for which Higdon was convicted individually permitted a life sentence, the Guidelines required the court to order that the sentences run consecutively, resulting in a total sentence of 145 years in prison. *See* U.S.S.G. §
(continued...)

*Davis*, 329 F.3d 1250, 1254 (11ᵗʰ Cir. 2003).  *See also Oregon v. Ice*, __ U.S. ___, 129 S.Ct. 711 (2009)(In light of historical practice and States' authority over administration of their criminal justice systems, the Sixth Amendment does not inhibit States from assigning to judges, rather than to juries, finding of facts necessary to imposition of consecutive, rather than concurrent, sentences for multiple offenses).

The district court's factfinding, which resulted in a higher offense level for Higdon and shifted his sentence upward *within the prescribed statutory range*, did not implicate the holding of *Apprendi*.  *See Sanchez*, 269 F.3d at 1261.  "*Apprendi* does not apply to judge-made determinations pursuant to the Sentencing Guidelines."  *Id*. at 1262.  Because no *Apprendi* error occurred in the sentence imposed, Higdon cannot show that his counsel was ineffective for failing to raise an *Apprendi* claim at sentencing.  *See Chandler v. Moore*, 240 F.3d 907, 917 (11ᵗʰ Cir. 2001); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11ᵗʰ Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

### b.    Resultant "Waiver" of Blakely/Booker Claim

Higdon also appears to argue that his counsel was ineffective for failing to raise an *Apprendi* argument at sentencing – and on direct appeal – because counsel's failure to do so

---

(...continued)

5G1.2(d) ("If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.  In all other respects sentences on all counts shall run concurrently, except to the extent otherwise required by law.").

resulted in a waiver of any subsequent *Blakely*/*Booker* claim.[8]  *See § 2255 Motion* (Doc. No. 1) at pp. 6-7 (Ground Two); *also Reply to Government's Response* (Doc. No. 7) at 5.

Higdon was sentenced on August 8, 2003.  After an appeal was filed, Higdon's counsel (the same one who represented him at trial) filed his initial appellate brief on January 28, 2004.  The Supreme Court issued its opinion in *Blakely v. Washington*, 542 U.S. 296 (2004), on June 24, 2004, while Higdon's appeal was pending in the Eleventh Circuit. Shortly after the *Blakely* decision was announced, Higdon's counsel sought to file a supplemental brief with the Eleventh Circuit raising a *Blakely* issue regarding Higdon's sentence.  The Eleventh Circuit, however, rejected counsel's attempt to raise a *Blakely* issue for the first time in a supplemental brief, and eventually entered an opinion on rehearing en banc explaining its reasons for refusing to consider issues not presented in an initial appellate brief.  *See United States v. Higdon*, 418 F.3d 1136 (11th Cir. 2005).  By the time the Eleventh Circuit issued its opinion, the Supreme Court had entered its decision in *United States v. Booker*, 543 U.S. 220 (2005) (decided January 12, 2005).  The Supreme Court remanded Higdon's case to the Eleventh Circuit for further consideration in light of *Booker*.  *See*

---

[8]*See Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005). In *Blakely*, the Supreme Court held that the Washington State Sentencing Guidelines violated the Sixth Amendment right to a trial by jury.  542 U.S. at 303-04.  In so holding, the Court clarified the rule it had announced in *Apprendi* and held that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.  In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.  *Id*. at 303.  In *Booker*, the Supreme Court extended *Blakely* to the Federal Guidelines.  To remedy the Federal Guidelines' constitutional defect, the Court excised the statutory provision that made the Guidelines mandatory.  543 U.S. at 244-45.  Now, the Guidelines are "effectively advisory," and although a sentencing court must "consider Guidelines ranges," it may "tailor the sentence in light of other statutory concerns as well."  *Id*. at 245.

*Higdon v. United States*, 546 U.S. 802 (2005).  The Eleventh Circuit ultimately reaffirmed Higdon's sentence, finding that any *Booker* claim was waived when it was not raised in the initial appellate brief.  *United States v. Higdon*, 159 Fed.Appx. 96 (11th Cir. 2005).

What Higdon is suggesting by this claim of ineffective assistance is that his counsel should have presented a non-meritorious *Apprendi* claim at sentencing and on direct appeal so that he might have preserved his ability to later raise a claim based on Supreme Court decisions (*Blakely* and *Booker*) that had not been rendered at the time counsel filed his initial appellate brief.  As far as an *Apprendi* argument goes, however, counsel was not required to raise nonmeritorious claims (see previous discussion).  As for any *Blakely*/*Booker* claim, counsel could not be expected to predict the changes in the law wrought by cases that had not been decided at the time Higdon was sentenced or by the time initial briefing was complete on direct appeal.

It is well settled that an attorney's failure to anticipate a change in the law does not constitute ineffective assistance of counsel.  *See, e.g., United States v. Ardley*, 273 F.3d 991, 992 (11th Cir. 2001); *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994); *Davis v. Singletary*, 119 F.3d 1471, 1476 (11th Cir. 1997); *Pitts v. Cook*, 923 F.2d 1568, 1572-74 (11th Cir. 1991).  Moreover, this "rule applies even if the claim based on anticipated changes in the law was reasonably available at the time counsel failed to raise it."  *Ardley*, 273 F.3d at 993 (citing *Pitts*, 923 F.2d at 1572-74).  Thus, Higdon's counsel cannot be faulted for failing to anticipate the Supreme Court's decision in *Blakely*.  Nor can counsel be deemed

ineffective for lacking the additional prescience to anticipate that the holding in *Blakely* would then lead to the Supreme Court's decision in *Booker* to remedy potential Sixth Amendment problems in application of the Federal Guidelines – particularly because the *Blakely* opinion makes clear that it expresses no opinion on the continuing validity of the federal guidelines, *see Blakely*, 542 U.S. at 305 n.9.

Consequently, Higdon has not established that his counsel's failure to raise either an *Apprendi* claim or a *Blakely/Booker* argument fell below an objective standard of reasonableness, and Higdon is not entitled to any relief based on this claim of ineffective assistance of counsel. *See Strickland*, *supra*, 466 U.S. at 688.

### 2.   Failure to Investigate and Prepare for Argument on Attributable Drug Amount

Higdon asserts this claim:  "[counsel] failed to investigate and properly prepare for argument on drug amounts which were in proffer.  Clearly *Jones/Apprendi* issue and Circuit Precedent as defined in *ROGERS* 99-15150 9/29/2000 and *Swatzie* 00-1079 9/29/2000 [sic]."  *See § 2255 Motion* (Doc. No. 1) at p. 5.  This is the entirety of Higdon's claim in this regard, and he presents no argument or facts elaborating on this claim.  However, based on the cases cited by Higdon,[9] it appears this claim is little more than a reassertion of his claim that his counsel rendered ineffective assistance by failing to raise an *Apprendi* argument.  For the reasons indicated in Part II.D.1 of this Recommendation, above, Higdon's counsel was

---

[9]*See Jones v. United States*, 526 U.S. 227 (1999); *United States v. Rogers*, 228 F.3d 1318 (11th Cir. 2000); *United States v. Swatzie*, 228 F.3d 1278 (11th Cir. 2000).  *Jones* is a progenitor of *Apprendi*.  *Rogers* and *Swatzie* were decided shortly after *Apprendi* and dealt with *Apprendi*-type issues on appeal.

not ineffective for failing to raise an *Apprendi* argument.

Furthermore, the transcript of the sentencing hearing reflects that Higdon's counsel presented strenuous objections to the drug quantities attributed to Higdon, and counsel's arguments in this regard evidenced ample familiarity with the evidence upon which these drug-quantity determinations were based, including the presentence report, which contained an accounting of the proffer statement of codefendant John Gabriel Medley regarding his drug dealings with Higdon. Counsel objected to the district court's use of the base offense level calculations in the presentence report because the computation was based on Medley's proffer. Counsel then pursued this issue in Higdon's direct appeal. *See United States v. Higdon*, 122 Fed.Appx. 985 (11th Cir. 2004). Thus, Higdon's assertion that his counsel was "unprepared" for arguments on attributable drug amounts is not supported by the record. Higdon is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 3.    Failure to Properly Investigate Confidential Informants

Higdon contends that his counsel rendered ineffective assistance by failing "to properly investigate the confidential informants and their reliability." *See § 2255 Motion* (Doc. No. 1) at p. 5.

In an affidavit filed with this court, Higdon's counsel addresses this claim as follows:

> Prior to trial, counsel raised an entrapment defense. Counsel contended both a trial and on appeal that Mr. Higdon had been entrapped by the confidential informant. In preparation for this defense, [counsel] conducted several interviews with Higdon concerning his co-worker who was known by counsel and Higdon to be the confidential informant. The co-worker, who testified for the government at trial, declined to be interviewed by counsel. Higdon

14

testified at trial that he possessed the methamphetamine represented in Counts Two, Three, and Four for personal use only. Counsel believes these defenses were adequately investigated and presented at trial because the jury acquitted Higdon as to Count One, the conspiracy allegation, as well as Counts Five and Six, distribution allegations, and the firearm allegations of Counts Seven, Eight, and Nine. Counsel also raised both entrapment and personal use issues on appeal to the Circuit Court.

*Affidavit of Michael J. Petersen* (Doc. No. 4) at p. 3.

In his pleadings filed with court, Higdon neglects to elaborate in any way on his claim that counsel rendered ineffective assistance by failing to properly investigate confidential informants.[10] He suggests nothing beneficial to his defense that counsel might have uncovered had he conducted a more thorough investigation, or in what way counsel could have conducted a more thorough investigation. Weighing the conclusory allegations in Higdon's § 2255 motion against the averments of counsel, and considering the record in this case, the court finds that Higdon has failed to show that counsel's performance in this regard was deficient or that he was prejudiced by counsel's performance. *See Strickland*, 466 U.S. at 687-89. Therefore, Higdon is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 4.    Failure to Investigate or Object to Audiotapes

Higdon contends he was denied effective assistance of counsel because his counsel "failed to object to the playing of taped evidence at trial that had not been shown to have met

---

[10]Higdon does not identify the confidential informants he says counsel failed to investigate. For purposes of this issue, the court presumes that the confidential informant discussed by counsel in his affidavit is one to whom Higdon alludes in his cursory claim.

the Rules of Evidence § 901(a) or to investigate the authenticity of said tapes prior to the actual trial." *See § 2255 Motion* (Doc. No. 1) at p. 5.

With regard to this allegation, Higdon's counsel states: "Pursuant to Fed. Rule Evidence 901(a), the government was allowed to play tapes of conversations between Higdon and the confidential informant (Higdon's co-worker). As there was no legal basis for objecting to this evidence, no such objection was raised at trial." *See Affidavit of Michael J. Petersen* (Doc. No. 4) at pp. 4-5.

In his original § 2255 motion, Higdon fails to explain how introduction of the tapes in question did not satisfy the requirements of Fed.R.Evid. 901(a),[11] nor does he suggest what a pretrial investigation of the tapes' authenticity might have uncovered. However, in his reply to the government's response to his § 2255 motion, Higdon sets forth what he says is evidence that a tape recording of events that occurred on December 10, 2002, was either fabricated or contained an "altered" or "redacted" version of an incriminating conversation between him and the confidential informant.[12] *See Reply to Government's Response* (Doc. No. 7) at pp. 7-9 & *Exhibit A* (Higdon's Affidavit).

According to Higdon, he is educated and experienced in electronics and sound

---

[11]Fed.R.Evid. 901(a) states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims."

[12]At trial, evidence was presented that on November 12, 2002, and December 10, 2002, the confidential informant made successful controlled buys of "ice" methamphetamine from Higdon. Both buys took place at Higdon's residence and were recorded by a concealed tape recorder provided by the DEA. On the recording of the December 10 transaction, Higdon is heard to admit involvement in a shooting a week earlier in Montgomery related to collection of a drug debt.

engineering and when, during his trial, he first heard the December 10 tape being played, he detected a "whirring" sound on the recording that indicated it was made on an A/C recorder, not a D/C recorder as had been testified to by the confidential informant. *Id*. Higdon asserts this as evidence that the tape was either fabricated or altered, either by the confidential informant (with or without the government's knowledge) or by the government itself. *Id*. Higdon says he brought this matter to his counsel's attention at trial, but his counsel failed to object to introduction of the tape on this ground or to seek expert authentication of the tape on this basis. *Id*.

Higdon's allegations in this regard amount to nothing more than his own self-serving and speculative conclusions. The supposed "whirring" sound on the recording is a thin reed upon which to build a claim that fabricated evidence was introduced against him. Moreover, Higdon does not even specify the nature of the falsification. While he suggests that portions of his conversation with the confidential informant were deleted from the version played at trial (see Higdon's Affidavit at p. 3), he does not explain how the supposedly deleted portion of the conversion would have been exculpatory. Nor does he explain how the portion of the conversation contained on the tape, as played at trial, was edited so as to contain only incriminating matters.

Because Higdon fails to establish the merits of his underlying claim regarding falsification of the December 10 tape, he cannot demonstrate that his counsel rendered ineffective assistance by failing to raise such a claim at trial. *See Strickland*, 466 U.S. at

687-89.  As such, he is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 5.      Government's *Brady* Violation with Regard to Tape Recordings

Higdon alleges that the government withheld exculpatory tape recordings in violation of *Brady v. Maryland* and contends that his counsel was ineffective for failing to raise this otherwise procedurally defaulted issue.  *See § 2255 Motion* (Doc. No. 1) at pp. 8 & 10-11.

In his § 2255 motion, Higdon fails to specify the suppressed recordings at issue; however, in his reply to the government's response to his motion, he explains that the evidence he alludes to in this regard is a tape recording of a telephone conversation between him and the confidential informant that took place on November 12, 2002, prior to the confidential informant's controlled buy of "ice" methamphetamine from Higdon.  *See Reply to Government's Response* (Doc. No. 7) at pp. 1-3.  During the phone conversation, the confidential informant arranged the November 12 buy from Higdon.  *Id*.  According, to Higdon, the recording of the phone conversation would have bolstered his entrapment defense by supporting his claim that he was not predisposed to sell drugs and that the confidential informant "badgered" him into making the sales.  *Id*.

To establish a *Brady* violation, a defendant must show that (1) the prosecution suppressed evidence; (2) the evidence suppressed was favorable to the defendant or exculpatory; and (3) the evidence suppressed was material to the issues at trial.  *See United States v. Burroughs*, 830 F.2d 1574, 1577 (11th Cir. 1987) (citing *Brady v. Maryland*, 373

U.S. 83 (1963)); *see also United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001). "Materiality" requires a finding that, had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. *Burroughs*, 830 F.2d at 1578.  A "reasonable probability" is one "sufficient to undermine confidence" in the result.  *Id*.

First, it is not at all clear from the record that the November 12 telephone conversation between the confidential informant and Higdon was tape-recorded.  Higdon bases his claim for the recording's existence on an ambiguous remark made by the confidential informant during his testimony at trial.  In his testimony, the confidential informant stated that, prior to the controlled buy of November 12, DEA agents planned that the phone conversation arranging the buy "was to be recorded."  *See Trial Transcript* - Vol. I at 48.  However, whether this conversation was in fact recorded is uncertain.  Thus, the existence of the allegedly suppressed evidence is questionable.  Next, this court is left only to guess whether the contents of such a conversation were favorable to Higdon.  Higdon suggests they were, yet he provides the court with nothing specific.  Finally, Higdon fails altogether to show that the evidence was material.  Not only is the exculpatory value of the allegedly suppressed evidence entirely speculative, but, as the Eleventh Circuit noted in its opinion affirming Higdon's conviction,

> [t]he record is replete with evidence that Higdon was predisposed to sell drugs before Carlton [the confidential informant] approached him about purchasing ice.  Several persons other than Carlton testified that Higdon sold them drugs before the alleged drug transactions in this case took place, and Higdon told

> Carlton that he had been selling drugs for 20 years.  The only evidence at trial
> that supported Higdon's entrapment defense was his own testimony, which the
> jury was free to reject.

*United States v. Higdon*, 122 Fed.Appx. 985 (11th Cir. 2004) (Table).  Consequently, this court concludes that there is not a reasonable probability that the tape recording of the phone conversation between the confidential informant and Higdon, if it indeed existed, would have changed the outcome of the proceedings.

Because Higdon fails to establish the merits of his claimed *Brady* violation, he likewise fails to show that his counsel was ineffective for failing to raise such an issue.  Therefore, he is not entitled to any relief based on his claim of counsel's alleged ineffective assistance.

### 6.    False Testimony from Government Witnesses

Higdon contends that the government "failed to correct known false testimony made by government witnesses" and that his counsel was ineffective for failing to raise what is otherwise a procedurally defaulted issue.  *See § 2255 Motion* (Doc. No. 1) at pp. 8 & 10-11.  Again, Higdon fails to specify in his § 2255 motion any of the government witnesses who allegedly gave "known false testimony" at his trial.  In his reply to the government's response to his motion, however, he points to one government witness, codefendant John Gabriel Medley, whose testimony he says was false in several instances.  *See Reply to Government's Response* (Doc. No. 7) at pp. 3-4.

The examples of Medley's testimony cited by Higdon hardly qualify as self-evidently

false.  Higdon first maintains that Medley made false statements, "known by the government to be patently untrue," about the amounts of marijuana he purchased from Higdon.  Doc. No. 7 at p. 3.  Higdon points to Medley's testimony, in response to a question about "the most marijuana [he] ever bought from [Higdon]," that "I think I got a pound of kind bud from him one time." *Trial Transcript* - Vol. II at 207.  Later in his testimony, however, when Medley is specifically asked how many times he purchased a pound of marijuana from Higdon, Medley states, "Maybe a half dozen or so." *Id*. at 263.  Elsewhere in his testimony, Medley also indicates that he purchased a pound of marijuana from Higdon a number of times.  *Id*. at 208-09.  The apparent discrepancies in Medley's testimony regarding the number of times he purchased a pound of marijuana from Higdon fail to establish that his testimony was "patently untrue."   In fact, after his initial response, when specifically asked about the number of times he purchased a pound of marijuana from Higdon, Medley consistently indicated that he made several such purchases.

Higdon next points to Medley's testimony that he and Higdon traveled to Atlanta in September 2002 and purchased two ounces of "ice" methamphetamine from Landon Birch. *Trial Transcript* - Vol. II at 211-12.  According to Hidgon, the government knew this testimony to be false because, Higdon says, Birch was in jail at the time of the alleged sale. Doc. No. 7 at pp. 3.  However, Higdon presents no evidence that Birch was, as he claims, in jail on the date in question.  In fact, testimony at trial indicated that Birch was not arrested and jailed until December 2002. *See Trial Transcript* - Vol. II at 263-64.

Finally, Higdon points to Medley's testimony regarding Higdon's role in ordering the drive-by shooting for which he was convicted. Doc. No. 7 at pp. 3-4. Higdon says that Medley's testimony in this regard was contradicted by the testimony of other witnesses who testified at trial. *Id.* Again, however, Higdon points to what are at most inconsistencies between Medley's version of events and those events as recounted by other witnesses. None of this establishes that Medley's testimony in this regard was false, much less known to be false by the government.

Higdon demonstrates neither that the complained-of testimony by Medley was false nor that the government knew it to be false. Consequently, he fails to show that his counsel was ineffective for raising such a claim. Further, the record reflects that during his cross-examination of Medley, Higdon's counsel diligently sought to highlight any inconsistencies within Medley's testimony as well as the differences between Medley's version of events and the versions related by others. Higdon is not entitled to any relief based on this claim of ineffective assistance of counsel.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Higdon be denied, as the claims therein entitle him to no relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or

before **February 26, 2009.**   A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 13th day of February, 2009.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE